Martha Boersch (State Bar No. 126569)
martha@boerschlaw.com
MARTHA BOERSCH, ATTORNEY AT LAW
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: (415) 217-3700

Attorney for Defendant
HAMID CHAZVINI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HAMID GHAZVINI, REZA NIKFAR, MING TAN, and THOMAS STEIBER,<br><br>Defendants. | Case No. CR12-00660 CW<br><br>**MOTION TO SUPPRESS EVIDENCE SEIZED FROM 7133 CAHEN DRIVE, SAN JOSE, CALIFORNIA AND REQUEST FOR EVIDENTIARY HEARING**<br><br>**Date: February 4, 2013**<br>**Time: 2:30 pm**<br>**Courtroom: Hon. Claudia Wilken** |

TO THE COURT AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 4, 2013, at 2:30 p.m. or as soon thereafter as the matter may be heard in the above-entitled Court, in the Courtroom of the Honorable Claudia Wilkin, United States District Court in and for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California, Fourth Floor, defendant Hamid Ghazvini will move this Court for an Order suppressing the evidence seized from 7133 Cahen Drive, San Jose, California, on the grounds that 1) the search warrant was overbroad and lacked sufficient particularity; 2) the affidavit lacked probable cause; and 3) the search warrant and affidavit were tainted by evidence unlawfully seized pursuant to an overly broad and deficient search warrant for Ghazvini's emails accounts at Yahoo, Inc. If this Court determines that the warrant is facially valid, Ghazvini further requests an evidentiary hearing to determine whether the government exceeded the scope of the warrant in its execution by failing to follow the search protocol for electronically stored information (ESI).

This motion is based on this Notice of Motion and Motion, on the attached Memorandum of Points and Authorities, the Declaration of Martha Boersch, the pleadings and papers filed in this matter, and on other such arguments or evidence as the Court shall deem proper.[1]

**BACKGROUND**

The indictment in this matter was returned on September 6, 2012 against Hamid Ghazvini, Reza Nikfar, Ming Tan, and Thomas Steiber. Hamid Ghazvini and the other defendants are charged in the indictment with wire fraud and money laundering arising from an alleged scheme to defraud Seagate Technology LLC, the former employer of Ghazvini, Nikfar and Tan. The "gist of the scheme" is allegedly that Ghazvini "used his position at Seagate to obtain confidential information, which he then transmitted to Seagate suppliers." "In return," allegedly, "the suppliers paid Ghazvini" and others "kickbacks." Indictment ¶ 11.[2]

On September 25, 2012, while the indictment was still under seal, the government obtained a search warrant for Ghazvini's home at 7133 Cahen Drive in San Jose, California. The face page of the search warrant authorizes the search of the residence described in Attachment A and the seizure of the items described in Attachment B. It contains no reference to any specific federal offense. *See* Declaration of Martha Boersch, Exhibit 1 (hereinafter "Boersch Decl."). Attachment B authorizes the government to seize any digital device "used to facilitate violations of" the wire fraud and money laundering statutes. It contains no further description of alleged offenses. Attachment B further allows the government to seize a number of broad categories of documents, including "all records . . . related to" Seagate and a number of other companies; "all records" related to "kickbacks, commissions, consulting or marketing fees, again with no date limitation; "all financial records"

---

[1] Ghazvini reserves the right to supplement this and any other motion and to file additional motions. The government has not completed production of discovery in this matter, nor has counsel been able to review all of the thousands of pages produced thus far. *See* Declaration of Martha Boersch at ¶¶ 2-4. Additional discovery and further review of discovery may reveal facts relevant to this motion and/or other motions.

[2] Nowhere in the indictment is the alleged "confidential information" identified, nor does the indictment recite any evidence that would support a conclusion that any particular information disclosed to suppliers was legally "confidential." For this reason, and because the discovery thus far also fails to identify the alleged "confidential information," Ghazvini files concurrently a motion for a bill of particulars. *See* Motion for Bill of Particulars.

related to a list of individuals and entities; all cash or monetary instruments, and "all accounting records" related to a list of individuals. None of the categories contain any date restriction, any definition of terms, any description of the alleged underlying criminal activity, or any reference to any federal criminal law. *Id*.

The search warrant also contained, in Attachment C, a protocol for searching for ESI. Boersch Decl., Exhibit 1. That protocol required the government to determine whether the electronic devices could be searched on-site, and if not, to make a mirror image of the device. *Id*. If the government determined that a mirror image could not be made on-sire within a reasonable time, the protocol allowed the government to seize the device, but required the government to "file a return with a magistrate judge that identifies with particularity the removed device" within 14 days of the execution of the warrant. The protocol also required the government, "within a reasonable amount of time, but not to exceed 60 calendar days after completing the forensic review of the device or image," to destroy or return to defendant any data outside the scope of the warrant. *Id*. The protocol required the government to "minimize" exposure to materials outside the scope of the warrant. *Id*. The protocol did not require the government to forswear reliance on the plain view doctrine, and it did not require the government to have someone other than the case agents, *e.g*., a "filter team," review the data that was outside the scope of the warrant.

The affidavit submitted to the court in support of the search warrant was not incorporated into nor attached to the search warrant. Boersch Decl., Exhibit 2. On its face the affidavit requested a search warrant to search for and seize evidence related to the crimes of wire fraud and money laundering. The affidavit purported to set forth probable cause to believe that Ghazvini was committing the crime of wire fraud by disclosing Seagate confidential information to suppliers and receiving kickbacks. *Id*., Exhibit 2 at 4-7. The affidavit alleged that Ghazvini used three digital devices as part of the scheme: two Seagate-issued computers and a hard drive. *Id*. ¶¶ 28-29. One of those laptops was returned to Seagate before the search. *Id*. ¶ 30. Much of the alleged probable cause for the search consists of quotes from emails seized pursuant to two other search warrants

issued to Yahoo, Inc.: one for the accounts of Ghazvini and one for the accounts of Tan. *Id*. ¶ 32, ¶¶ 45-78.[3]

## SUMMARY OF ARGUMENT

The search warrant for 7133 Cahen Drive is overbroad and lacks the required specificity. The warrant failed to describe the criminal activity on the face of the warrant, and in the attachment only the first category of items to be seized contained any reference to the statutes at issue in this case. *See* Boersch Decl., Exhibit1. The warrant authorized the search and seizure of virtually every electronic device in Ghazvini's house, regardless of whether that device had any connection to the specific alleged offenses or even any connection to Ghazvini, and it allowed agents to seize all cash and any monetary instrument without any showing that such items were related to the alleged offense. It listed broad categories of documents without any particularity or limitations on which documents within each category could be seized. For instance, it allowed agents to seize "all financial records" related to named individuals regardless of whether those financial records had any relationship to the alleged offenses; it allowed agents to seize "all records" related to a list of individuals and companies, regardless of whether those records had any relationship to the alleged offenses; and it allowed agents to seize "all accounting records" related to Ghazvini and others regardless of whether they related to the alleged offenses. *Id*. Such a warrant is facially overbroad.

The search protocol attached to the warrant further rendered the warrant overbroad. That protocol did not require the government to foreswear reliance on the plain view doctrine and contained no provision for the seized data to first be reviewed by a filter team to segregate relevant data from personal, private and irrelevant data. The protocol also improperly allowed the government to search and seize any digital device without probable cause to believe that any but two digital devices were even potentially used in furtherance of a crime.

The affidavit submitted to the Court in support of the request for the search warrant, which was not attached to or incorporated into the search warrant, also fails to demonstrate probable cause that Ghazvini committed a crime. The affidavit is devoid of any evidence that any "confidential"

---

[3] Ghazvini files concurrently a Motion to Suppress Evidence Seized From bizbangbang@yahoo.com, arcsollimited@yahoo.com and hamidfg@yahoo.com Operated by Yahoo, Inc. (hereinafter "Motion to Suppress Emails"), which is fully incorporated herein by reference.

Seagate information was disclosed to suppliers, or that any money received by Ghazvini and others was "in return" for such confidential information. The affidavit shows, at best, that Ghazvini violated his employment agreement with Seagate, which prohibited him from engaging in activities that constitute a conflict of interest. But a mere violation of an employer's conflict of interest policy is not a crime. Thus, the affidavit lacks probable cause that Ghazvini committed the crime of wire fraud.

Finally, the affidavit relies heavily on and quotes liberally from emails unlawfully seized from Yahoo, Inc. pursuant to an equally defective warrant. The use of that evidence fatally taints the search warrant for Ghazvini's house. Therefore, under *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) the evidence seized from Ghazvini's house must also be suppressed.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     THE SEARCH WARRANT IS FATALLY OVERBROAD**

The search warrant is overbroad and lacks sufficient particularity. A search must be specific as to the place searched and persons and things seized. *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 7747 749 (9th Cir. 1989). The purpose of the constitutional requirement of specificity for search warrants is to prevent law enforcement from engaging in general, exploratory searches with no limits on their discretion. *United States v. Cardwell,* 680 F.2d 75, 77 (9th Cir. 1982). "Specificity has two aspects: particularity and breadth. . . . Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Schesso*, 842 F.Supp.2d 1292 (W.D. WA. 2011) (citing *United States v. Hill*, 459 F.3d 966, 973 (9th Cir.2006)). The warrant should list the items to be seized with such specificity that "nothing is left to the discretion of the officer executing the warrant." *United States v. Bridges*, 344 F.3d 1010, 1016 (9th Cir. 2003) (quoting *Cardwell*, 680 F.2d at 77).

The search warrant here lacks the requisite particularity and is overbroad. The warrant allows the government to search and seize every electronic device in Ghazvini's house that was "used to facilitate violations of" the federal wire fraud and money laundering statutes, but regardless of whether it had any connection to the specific alleged offenses and regardless of whether it belonged to Ghazvini or some other family member. But the affidavit contained facts relating only to two

laptops (one of which was no longer at Ghazvini's residence) and a hard drive. *See* Boersch Decl., Exhibit 2. There were no facts, and no probable cause, to search for and seize all the other electronic devices in the house. The warrant was therefore overbroad. *See Schesso*, 842 F.Supp.2d at 1297 (search warrant affidavit did not support probable cause for the search and seizure of all electronic storage devices found at defendant's residence and was thus overbroad).

Furthermore, the warrant did not describe the items to be searched for and seized with any particularity, instead simply authorizing the search and seizure of anything that was evidence of the crimes of wire fraud or money laundering. Boersch Decl., Exhibit 1. Such a broad "limitation" on items to be seized is insufficient under the Fourth Amendment. *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982) ("'limiting' search to only records that are evidence of a violation of a certain statute is generally not enough); *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) (same).

Neither the face of the warrant, nor any of the other categories of documents listed in Attachment B was limited *at all* by reference to any federal statute. The warrant allowed agents to seize *all* cash and any monetary instrument without any showing that such items were related to the alleged offense. It allowed the seizure of broad categories of documents "related to" a list of individuals and companies without any particularity or description of how the documents to be seized related to any specific criminal activity, and without any limitations on which documents within each category could be seized. Such a search warrant is fatally overbroad. *See United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) ("By failing to describe with any particularity the items to be seized, the warrant is indistinguishable from the general warrants repeatedly held by this court to be unconstitutional").

In *Kow*, the Ninth Circuit suppressed evidence seized pursuant to a warrant that, like this warrant, broadly authorized the seizure of generic categories of records as well as any records "relating to any fake or fraudulent transactions" between or among four individuals or relating to any business dealings with another company. 58 F.3d at 426. The warrant in *Kow*, like the warrant here, did not describe the specific criminal activity that was under investigation or attempt to limit the records to be seized to those that related to that specific criminal activity. *Id*. at 427, 428 ("Here, none of the fourteen categories of seizable documents was limited by reference to any alleged

criminal activity). The warrant in *Kow*, like the warrant here, did not limit the scope of the seizure to a time frame in which the suspected criminal activity took place. The Court held that such a warrant was "not sufficiently particular." *Id*.

Nor can the government rely upon the affidavit submitted in support of the search warrant to provide the requisite specificity. That affidavit was neither attached to nor incorporated into the search warrant, and therefore cannot save the defective warrant. *See Spilotro, supra*, 800 F.2d at 967; *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982). Perhaps more importantly, the affidavit itself failed to establish probable cause that Ghazvini committed a crime, as discussed *infra*.

The search warrant here is indistinguishable from the search warrants the Ninth Circuit and other courts have found fatally overbroad, and the evidence seized from Ghazvini's house must therefore be suppressed.

## II. THE SEARCH WARRANT PROTOCOL RENDERED THE WARRANT OVERBROAD AND FAILED TO FOLLOW NINTH CIRCUIT LAW

The search warrant protocol included in the search warrant as Attachment C further rendered the warrant overbroad. Since the Ninth Circuit decided *United States v. Comprehensive Drug Testing*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) ("*CDT*"), a decision out of this district, the government has been on notice that it must adopt search protocols for ESI that prevent "general rummaging" through an individual's private, personal electronic information. *See generally, In re United States of America's Application for a Search Warrant to Seize and Search Electronic Devices from Edward Cunnius*, 770 F.Supp.2d 1138 (W.D. Wa. 2011) (hereinafter *In re USA Application*). The protocol here is woefully deficient because it does not require the government to foreswear reliance on plain view and it makes no provision for a filter team. Furthermore, even though the protocol does require the government to destroy or return the data outside the scope of the warrant, the government did not do so here. Indeed, it appears that the government did not bother to follow the protocol at all. *See* Boersch Decl., Exhibit 5.

The District Court in *In re USA Application* refused to authorize a search warrant for any electronic device found in a residence where the government refused to foreswear reliance on the

plain view doctrine when executing the search and refused to establish a filter team to review the data seized on those devices. 770 F.Supp.3d at 1139. Without those prophylactic measures, the warrant was overbroad. *Id*. at 1141. Indeed, the warrant was "in essence, boundless," insofar as it allowed the agents to seize any "passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data." Id. at 1145.

The warrant here similarly did not contain the required prophylactic measures and allowed the government "boundless" discretion to search and seize ESI storage devices. *See* Boersch Decl., Exhibit 1, Attachment C and Attachment B (allowing seizure of "any physical keys, encryption devices, dongles and similar items that are necessary to gain access to the digital device" as well as "any passwords, password files, test keys, encryption codes or other information"). As a result, the warrant allowed the government to conduct a "general rummaging" through Ghazvini and his family's personal private data. As Judge Kleinfeld has noted in dissent:

> [For most people, their computers are their most private spaces. . . . There are just too many secrets on people's computers, most legal, some embarrassing, and some potentially tragic in their implications, for loose liberality in allowing search warrants. . . . Nor are secrets the only problem. Warrants ordinarily direct seizure, not just search, and computers are often shared by family members. Seizure of a shared family computer may, though unrelated to law enforcement purpose, effectively confiscate a professor's book, a student's almost completed Ph. D thesis, or a business accounts payable and receivable.

440 F.3d 1065, 1077 (9th Cir. 2006). That is, in fact, exactly what happened here: the government seized numerous personal, private emails of Ghazvini and his family, as well as business information relating to Ghazvini's wife's dentistry practice and Ghazvini's and his uncle's real estate business. None of that information was within the scope of the warrant and none of that information appears to have been destroyed, as required by the government's own protocol, nor has it been returned to the defense. Boersch Decl. ¶ ___.[4]

The search protocol rendered the warrant overbroad, and in any event even its minimal requirements apparently were not followed; therefore any evidence seized must be suppressed.

///

---

[4] If the Court determines that the protocol is valid, Ghazvini reserves his right to challenge the execution of the warrant, to obtain discovery, and to an evidentiary hearing to determine whether the search protocol was properly followed.

### III. THE SEARCH WARRANT AFFIDAVIT LACKED PROBABLE CAUSE THAT GHAZVINI COMMITTED A CRIME

"[U]ndisclosed self-dealing by a . . . private employee that furthers his own undisclosed financial interest while purporting to act in the interests of those to whom he owes a fiduciary duty" is *not* a crime under the wire fraud statute. *Skilling v. United States*, 130 S.Ct. 2896, 2932 (2010); *United States v. Riley*, 621 F.3d 312, 323 (3 Cir. 2010) (mere violation of a duty of honest, faithful and disinterested service is not a legal basis for mail fraud charge after *Skilling*). Instead, only conduct involving "bribes and kickbacks" violates the wire fraud statute. *Id*. Here, although the indictment and search warrant affidavit allege in a conclusory fashion that Ghazvini received "kickbacks" in return for disclosing "confidential information," in fact both are devoid of any evidence to support that conclusion. While the bare allegation of the receipt of "kickbacks" may insulate the indictment from facial challenge, the absence of any evidence of a federal crime in the search warrant and the lack of any evidence in the affidavit to support the conclusory allegation that Ghazvini received "kickbacks" in exchange for "confidential information" renders the search warrant devoid of probable cause that Ghazvini committed a crime.

An affidavit in support of a search warrant must "provide the magistrate with a substantial basis for determining the existence of probable cause" and a "wholly conclusory statement" is insufficient. *Illinois v. Gates*. 462 U.S. 213, 239 (1983); *United States v. Dubrovsky*, 581 F.2d 208, 212 (9th Cir. 1978) ("A search warrant may not rest upon mere affirmance or belief without disclosure of supporting facts or circumstances").

The affidavit here contains nothing other than the conclusory assertion of the FBI agent that Ghazvini disclosed "confidential information." *See, e.g.*, Affidavit ¶¶ 15, 20-23, 32, 33, 47, 51, 61, 63. The specific paragraphs describing actual communications from Ghazvini similarly contain no evidence that the words conveyed by Ghazvini contained or consisted of "confidential information." For instance, the affiant quotes an email from Ghazvini to codefendant Tom Steiber and asserts that Ghazvini is "instructing ePak how to negotiate against Seagate." Affidavit at ¶ 45. This conclusion is unsupported by any actual evidence, and, moreover, nowhere does the affiant indicate whether, even if this were true, the email contains information that is actually confidential. Similarly, the

affiant quotes another email from Ghazvini to Steiber and asserts that Ghazvini was "disclosing Entegris' competing bid." *Id.* ¶ 46. Again, even if this is true, there is no evidence in the affidavit demonstrating that Entegris' bid was confidential information. Maybe it was, but there is nothing in the affidavit to show that, and it could just as likely be that Entegris's bid was not confidential.

For every email quoted in the affidavit there is no evidence demonstrating that the disclosures in the email (if any) consisted of confidential information; there is only the affiant's unsupported conclusion that confidential information was disclosed. There is no evidence in the affidavit to show that Seagate considered the specific information allegedly disclosed by Ghazvini to be confidential. The affiant does not say that any Seagate representative described the information as confidential; there is no evidence of any Seagate policy specifically describing the allegedly disclosed information as confidential; there is no evidence that Seagate employees were trained to keep the specific information disclosed confidential. *Compare United States v. Mahaffy*, 693 F.3d 113, 124-25 (2d Cir. 2012) (government presented sufficient evidence on "critical issue" whether disclosed information was in fact confidential, where representatives of firms testified that information was confidential, employees were trained to treat information as confidential, information was not widely disseminated within the firm or to outsiders, and firm policy described information as confidential). Absent such evidence, the affidavit is insufficient to establish probable cause that Ghazvini committed a crime.[5]

Similarly, there is no evidence to support the affiant's conclusory allegation that the money Ghazvini received from suppliers was a "kickback" paid in exchange for the disclosure of the supposedly confidential information. While the Supreme Court in *Skilling* held that schemes to defraud involving "bribes and kickbacks" were within the ambit of honest services mail and wire fraud, it did not define the term "kickback." However, the term "kickback" has been defined by lower courts as a "commonly understood term encompassing payment for a corrupt purpose," or, more specifically, "the transfer back to one having control of the original payment" or a payment to "one in a position to open up or control a source of income or gain." *United States v. Ruttenberg*, 625

---

[5] Ghazvini may well have violated his employment agreement with Seagate by failing to disclose a conflict of interest but the breach of his employment agreement by itself is not a crime.

F.2d 173 (7th Cir. 1980); *United States v. Perlstein*, 632 F.2d 661, 663 (6th Cir. 1980) (quoting *United States v. Hancock*, 604 F.2d 999, 1001-02 (7th Cir. 1979)). It has also been defined as a payment made "in return for favorable treatment." *United States v. DeMizio*, 2012 WL 1020045 (E.D.N.Y., March 12, 2012).

Here, as indicated above, there is no evidence in the affidavit that the money Ghazvini received from suppliers was for a corrupt purpose – the alleged disclosure of confidential information – because there is no evidence that the information was confidential, nor is there any evidence whatsoever that the suppliers were paying Ghazvini for that information as opposed to paying him for some other service. The affidavit includes no evidence from any of the suppliers that they intended the payments as payments for the alleged confidential information. Instead, the affidavit contains only the affiant's conclusory statement that the payments were "kickbacks." But, such a "wholly conclusory statement" is insufficient to support probable cause. *Gates*, *supra*, 462 U.S. at 239.

Similarly, not only is there no evidence in the affidavit that Ghazvini ever had control over the original payment or the capacity to provide favorable treatment, the affidavit affirmatively demonstrates the opposite – "it was not Ghazvini's responsibility to negotiate or award payments." Affidavit ¶ 27. Thus, the affidavit is devoid of evidence establishing probable cause that the alleged payments Ghazvini received were unlawful "kickbacks," and absent such evidence, the affidavit lacks probable cause that Ghazvini committed a crime.

### IV. THE EVIDENCE SEIZED FROM 7133 CAHEN IS TAINTED BY THE UNLAWFUL SEARCH OF THE EMAIL ACCOUNTS AT YAHOO

The search warrant affidavit for Ghazvini's house relies almost exclusively on quotations from emails seized from Ghazvini's emails accounts to attempt to establish probable cause. As demonstrated in the concurrently filed Motion to Suppress Email Accounts, the search warrant authorizing the seizure of those email accounts was fatally overbroad. Therefore, under *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963), the evidence seized from Ghazvini's house must be suppressed.

### V. THE GOOD FAITH EXCEPTION OF LEON IS INAPPLICABLE

Because the search warrant here is facially deficient, as was the warrant in *Kow*, the good faith exception of *United States v. Leon*, 468 U.S. 897, 926 (1984) does not apply. *Kow*, 58 F.3d at 428 ("when a warrant is facially overbroad, absent *specific assurances* from an impartial judge or magistrate that the defective warrant is valid despite its overbreadth, a reasonable reliance argument fails"). Furthermore, here, as in *Kow,* the affidavit was not attached to nor incorporated by reference into the search warrant, nor is there any evidence that the executing officers read or relied on the warrant. In fact, the evidence suggests otherwise, since the government seized and searched every electronic device and seized a large amount of wholly irrelevant documents. *See* Declaration of Martha Boersch.

## CONCLUSION

For the foregoing reasons and based on the record herein, the evidence seized from 7133 Cahen Drive must be suppressed.

Dated: January 18, 2013

 */s/ Martha Boersch*
Martha Boersch
Attorney for Defendant
HAMID GHAZVINI